161 P.3d 1059 (2007)
Deborah DEVENY, Appellant,
v.
Collette HADALLER and John Doe Hadaller, wife and husband, and the marital community composed thereof, and Debbie Simons and John Doe Simons, wife and husband, and the marital community composed thereof, Healthy Foundations, Inc., a Washington corporation, dba Curves, and Life and Goodness, Inc., a Washington corporation, Respondents.
No. 35028-9-II.
Court of Appeals of Washington, Division 2.
July 10, 2007.
*1060 Rand L. Koler, Patrick Leo McGuigan, Rand L. Koler and Associates PS, Seattle, WA, for Appellant.
Paul Francis Cane, Dana Copstead Hoerschelmann, Russell Charles Love, Thorsrud Cane & Paulich, Patrick Joon Kang, Premier Law Group, Seattle, WA, for Respondents.
VAN DEREN, A.C.J.
¶ 1 Deborah DeVeny appeals the trial court's order granting summary judgment to Collette and John Doe Hadaller, Debbie and John Doe Simons, Healthy Foundations, Inc., and Life and Goodness, Inc.[1] on her claims for breach of contract, intentional misrepresentation, violation of the Washington Uniform Trade Secrets Act (UTSA),[2] tortious interference with business relations, and misappropriation of trade name arising from a disputed sale of her tanning business, Tropic Tanz. DeVeny argues that the trial court erred in ruling that she lacked legal capacity to enter into a contract to sell her business because its assets belonged to her bankruptcy estate and that the bankruptcy code's automatic stay[3] barred her from selling them. We reverse and remand for trial, holding that (1) DeVeny had the legal capacity to enter into the alleged contract, (2) the automatic stay provision did not bar her ability to administer business assets, and (3) judicial estoppel does not bar her claims.

FACTS
¶ 2 Deborah DeVeny owned and operated Tropic Tanz, a tanning salon, in Winlock, Washington.[4] Tropic Tanz occupied half of the 2,500 sq. ft. space that DeVeny rented from Bill Allegre under a month-to-month oral lease. Its assets, other than the lease, *1061 goodwill, or customer lists, comprised four tanning beds and miscellaneous office equipment. DeVeny had no employees but she sublet a part of the space to Jennifer Serl, a hairdresser, and "supplied all of her equipment chairs, mirrors, sink, all of that." Clerk's Papers (CP) at 303.
¶ 3 On April 10, 2003, DeVeny and her husband, Charles DeVeny, filed for personal bankruptcy under chapter 7 of the United States Bankruptcy Code.[5] Their section 341 hearing[6] was held on May 21, 2003 and the final bankruptcy discharge occurred on July 22, 2003, under former 11 U.S.C. § 727 (1986).[7]
¶ 4 Hadaller and Simons were shareholders of Healthy Foundations, Inc. Healthy Foundations owned several "Curves for Women" franchises, women's fitness clubs. CP at 336. On June 26 or 27, 2003, Allegre told Hadaller that Tropic Tanz had unused space available. Hadaller and Simons visited DeVeny and asked about subleasing DeVeny's unused space. DeVeny declined to sublet any space, but offered to sell Tropic Tanz and her leasehold interest to Hadaller and Simons for $35,000. DeVeny claims that Hadaller and Simons accepted her offer to sell. Hadaller says that they did not reach an agreement because she requested DeVeny's financial records to determine the Tropic Tanz value. According to Hadaller, she did not receive DeVeny's financial records until "after July 11."[8] CP at 338.
¶ 5 On June 27, 2003, Hadaller and Simons executed a five-year lease with Allegre on behalf of Healthy Foundations for DeVeny's entire space. "This lease [was] contingent on the sale of Tropic Tan[z] from Debbie DeVeny." CP at 347. According to DeVeny, Hadaller and Simons started to "paint the premises" the next day. CP 191. DeVeny "tentatively agreed" to move out by July 21, 2003, but "they had not discussed the specifics of [Hadaller and Simons] taking over Tropic Tanz sooner than September 1, 2003." CP at 191. DeVeny had to leave the area to look after her mother who had suffered a heart attack and left Jennifer Serl "to look after things while [she] was away." CP at 191. Due to this delay, Healthy Foundations and Allegre voided the June 27 lease and entered into a month-to-month lease for two-thirds of the space on July 11. The second lease agreement states that "[Healthy Foundations] will be sharing lease space temporarily with Debbie DeVeny of Tropic Tanz." CP 294.
¶ 6 On July 18, 2003, DeVeny left to care for her mother and, on the same day, asked Serl to take care of Tropic Tanz while she was away and closed her Tropic Tanz business account with the Department of Revenue. Thereafter, Serl, Hadaller, and Simons serviced DeVeny's tanning clients as they came into Tropic Tanz. According to Serl, she was not aware of any restriction that prohibited her from using the information in DeVeny's client cards. Amanda Whisler, a former employee of Tropic Tanz/Curves for Women,[9] stated that Hadaller and Simons used DeVeny's client cards containing the client's name, address, phone number, history of using Tropic Tanz, skin type, hair color, and history of sun exposure. Whisler was later instructed to enter the information from DeVeny's client cards into Hadaller and Simons' new client database.
¶ 7 Hadaller and Simons subsequently learned that their franchise agreement with Healthy Foundations barred them from operating the Curves franchise with other businesses, including tanning salons, so they formed a new corporation, Life & Goodness, Inc. on July 30 to purchase Tropic Tanz. Then on August 4, 2003, after the Curves fitness club opened, Allegre and Hadaller *1062 signed a third lease that cancelled the second July 11 lease and affirmed the June 27 lease for DeVeny's entire space. This third amended lease removed the contingency clause that referred to the purchase of Tropic Tanz from DeVeny. As Tropic Tanz and Curves had the same entry door, Hadaller and Simons changed the lock. And because Allegre "had not received rent from [DeVeny] in quite some time," he removed her tanning beds and other furniture and stored them at an off-site location. CP at 285.
¶ 8 On August 13, DeVeny, Hadaller, and Simons met to further negotiate the purchase and sale of DeVeny's business. Later, DeVeny accepted their final offer of $9,893.95, over the telephone, with no discussion of a payment due date. DeVeny then sent them a letter, specifying a payment due date of August 22. Hadaller and Simons responded: "This letter is to inform you that we have been advised to allow your letter of acceptance to expire in accordance with your stated dated of expiration of August 22, 2003[,] and hereby withdraw all offers to purchase." CP at 364. They further stated:
It becomes necessary for us, as leaseholders, to ask you [to] remove your remaining business equipment from the premises. Supervised arrangements have been made for you to do so on Saturday, the sixth of September, 2003, between 1:00[pm] and 6:00[pm], to avoid any business disruption or customer inconvenience. If for any reason the equipment is not removed during this arranged day and time or [sic] have made other agreed arrangements prior to that date, the remaining equipment will be moved into storage at the sole cost to you until retrieved.
CP at 364. Finally, after having taken possession of DeVeny's business premises, Hadaller and Simons told DeVeny that unless she removed her belongings by November 1, they would sell them at her expense.
¶ 9 On July 7, 2004, DeVeny sued Hadaller, Simons, Healthy Foundations, and Life and Goodness. In her complaint for money damages, DeVeny claimed breach of contract, intentional misrepresentation, violation of UTSA, tortious interference with business relations, and misappropriation of trade name. She also requested attorney fees and injunctive relief to prevent Hadaller and Simons from using her trade name. Hadaller and Simons counterclaimed that DeVeny was unjustly enriched based on the tanning services they provided during DeVeny's absence. They also requested attorney fees at trial.
¶ 10 On January 23, 2006, during discovery, DeVeny produced documents relating to the 2003 bankruptcy action. Hadaller and Simons moved for summary judgment, claiming that DeVeny did not have the legal capacity to contract for the sale of Tropic Tanz because her assets were part of the bankruptcy estate and that the bankruptcy code's automatic stay provision, as well as judicial estoppel, barred DeVeny from entering into the contract or pursuing her claims.
¶ 11 Terrence Donahue, the bankruptcy trustee[10] assigned to DeVeny's bankruptcy, filed a declaration in response to the summary judgment motion, supporting DeVeny's position that the June 27 agreement was not *1063 void and that she was not judicially estopped from pursuing her breach of contract claim. Donahue stated:
1. Deborah and Charles DeVeny filed for bankruptcy under Chapter 7 on or about April 10, 2003, Case Number 03-43913. I was appointed as the bankruptcy trustee. I reviewed the assets scheduled in the bankruptcy case, including the tanning salon and tanning beds, and determined that there was not sufficient value to administer any assets. Accordingly, I filed a Trustee's Report of No Distribution and the case was closed.
2. The contract entered between Plaintiff and the Defendants appears to have been entered into on or about June 27, 2003, which post dates the petition. In light of the date of the contract, the fact that it is obviously disputed and Plaintiff's ability to exempt the contract, I do not intend to pursue the contract on behalf of the bankruptcy estate. Ms. DeVeny is free to pursue her contract claims against the Defendants.
CP at 59-60.
¶ 12 Despite the bankruptcy estate's abandonment of DeVeny's property for bankruptcy administration and the bankruptcy trustee's indication that the value of the disputed contract was within the exemption amount,[11] which DeVeny could have claimed if it had value, the trial court granted Hadaller and Simons' motion for summary judgment. The court ruled:
I indicated previously . . . that I was not an expert in bankruptcy and, obviously, that is still the case. However . . . I have to acquaint myself with certain concepts, and, in this particular case, I have spent some time considering bankruptcy law in regard to issues in this particular case.
Here's the way I see this situation. It is this Court's opinion that the plaintiff did not on June the 27th have the capacity to enter into a contract to sell Tropic Tan[z] because the matter was part of the bankruptcy estate at that time, and, as such, any alleged contract is null and void. It does not exist. For that reason, this Court has then considered other claims by the plaintiff in this particular case that are characterized as tort claims but all appear to arise from the plaintiff's allegations that a contract was breached. This Court is going to grant summary judgment to the defendants for the reasons that I've just stated.
Now, I have debated whether or not to say anything more and I am going to say some more which is at this time in the form of dicta, if you will.
. . . .
Secondly, I do want to spend a few moments talking about other arguments that were made. I've indicated that the bankruptcy matter being begun, there was indeed a stay, and the plaintiff might have brought these charges but needed the permission of the trustee to do so. That was not requested, and she did not have the capacity to enter into a contract for sale. However, other allegations by the defendants as to why summary judgment should be granted involve other concepts, judicial estoppel. I would not have granted summary judgment on the issue of judicial estoppel.
It appears that this claim arose after the petition for bankruptcy was instigated, and it appears that there is not any case that I found that dealt with that kind of situation. It appears that judicial estoppel would not apply when a claim arose after the bankruptcy had begun.
Likewise, as to standing, this Court would not have granted summary judgment on the issue of standing, in that while I believe that a claim should have been brought in the name of the bankruptcy estate, if you will, Civil Rule 17 indicates *1064 no action shall be dismissed on the ground that it is not prosecuted in the name of the real party until a reasonable time has been allowed after objection for joinder or substitution of the real party in interest.
. . . .
I will indicate that while I respect people having a job to do in various capacities, and in this case the trustee in bankruptcy had a job to do and that estate was closed, but he [] has now given some opinion about this particular matter. That's only an opinion, in this Court's thinking, and in no way binds this Court one way or the other. Whether or not this is a claim that the bankruptcy estate would have pursued or might consider pursuing in the future is not really before this Court.
Report of Proceedings (RP) at 17-20. DeVeny unsuccessfully filed a motion for reconsideration
¶ 13 DeVeny appeals.

ANALYSIS
I. Standard of Review
¶ 14 In reviewing a grant of summary judgment, we engage in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). A summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Marincovich v. Tarabochia, 114 Wash.2d 271, 274, 787 P.2d 562 (1990). "We review the trial court's conclusions of law de novo," Bingham v. Lechner, 111 Wash.App. 118, 127, 45 P.3d 562 (2002), but we may affirm the trial court "on any basis the record supports." Graff v. Allstate Ins. Co., 113 Wash.App. 799, 802, 54 P.3d 1266 (2002). "Statutory construction is a question of law and is reviewed de novo." Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 807, 16 P.3d 583 (2001).
¶ 15 We consider the evidence and the reasonable inferences from it in the light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wash.2d 17, 21, 896 P.2d 665 (1995). "A nonmoving party, . . . may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value." Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986). "After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact." Meyer v. Univ. of Wash., 105 Wash.2d 847, 852, 719 P.2d 98 (1986). Where reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment should be granted. LaMon v. Butler, 112 Wash.2d 193, 199, 770 P.2d 1027 (1989).
II. Bankruptcy Property
¶ 16 DeVeny argues that the "automatic stay has no application to this case." Reply Br. of Appellant at 5. But Hadaller and Simons respond that the trial court properly granted summary judgment because (1) the alleged June 27 contract violated the bankruptcy code's automatic stay, (2) Tropic Tanz was part of the bankruptcy estate, and (3) DeVeny failed to list the alleged contract in her bankruptcy schedule. DeVeny's argument has merit.
A. Application of the Automatic Stay
¶ 17 Section 362 of the bankruptcy code provides that filing a bankruptcy petition creates an automatic "stay, applicable to all entities." Former 11 U.S.C. § 362(a) (1998). But "[s]ection 362's automatic stay does not apply to sales or transfers of property initiated by the debtor." Schwartz, 954 F.2d 569, 574 (9th Cir.1992).
Whatever argument may be made for extending the protection of section 362 to creditors, it clearly does not confer any rights to outside parties. In re Brooks, 79 B.R. 479, 481 (Bankr.9th Cir.1987) ("if the debtor or the trustee chooses not to invoke the protections of § 362, no other party may attack any acts in violation of the automatic stay"); . . . In re Fuel Oil Supply and Terminaling, Inc., 30 B.R. 360, 362 (Bankr.N.D.Tex.1983) ("The automatic *1065 stay is for the benefit of the debtor and if it chooses to ignore stay violations other parties cannot use such violations to their advantage").
In re Globe Inv. & Loan Co., 867 F.2d 556, 560 (9th Cir.1989). "Consequently, if the debtor or the trustee chooses not to invoke the protections of § 362, no other party may attack any acts in violation of the automatic stay." Washington Mutual Savings Bank v. James (In Re Brooks), 79 B.R. 479, 481 (9th Cir.BAP1987). Thus, Hadaller and Simons may not invoke its protection.
¶ 18 Moreover, "[t]he wording of [section] 549, which specifically addresses post-petition transfers, indicates that a transfer made in violation of the stay may be voidable at the trustee's discretion."[12]Brooks, 79 B.R. at 480. "The purpose of section 549 . . . is to provide a just resolution when the debtor himself initiates an unauthorized postpetition transfer." 40235 Wash. St. Corp. v. Lusardi, 329 F.3d 1076, 1081 (9th Cir.2003).
Section 549 applies to unauthorized transfers of estate property which are not otherwise prohibited by the Code. In most circumstances, section 549 applies to transfers in which the debtor is a willing participant. For example, in a transfer unrelated to any antecedent debt, the debtor may sell a portion of the estate's property to a third person. The trustee has the power to avoid such a transfer under section 549. Schwartz, 954 F.2d at 573-74 (internal citations omitted).
¶ 19 Here, DeVeny's lawsuit involves a dispute over a contract with Hadaller and Simons to sell her interest in Tropic Tanz on June 27, 2003. If such a contract was indeed formed, it was not a preauthorized, postpetition transfer of estate property, but the bankruptcy code did not prohibit it. Thus, as a debtor, DeVeny had the capacity to sell or transfer a portion of the bankruptcy estate's property to a third person under section 549. Schwartz, 954 F.2d at 573-74. The law is clear that DeVeny had the legal capacity to sell or transfer her interest in Tropic Tanz to Hadaller and Simons on June 27.
¶ 20 Furthermore, the bankruptcy code did not bar DeVeny from entering into the contract because, when the bankruptcy trustee learned of the transaction, he chose to not invoke section 362 protections and void the transaction. A debtor's postpetition transfer, unrelated to any antecedent debt, is valid unless the bankruptcy trustee invokes its power to avoid such a transfer. Schwartz, 954 F.2d at 573-74; Brooks, 79 B.R. at 481. Notably, Donahue explicitly stated, "I do not intend to pursue the contract on behalf of the bankruptcy estate. Ms. DeVeny is free to pursue her contract claims against the Defendants." CP at 60. Accordingly, if the *1066 parties entered into a contract to transfer DeVeny's interest in Tropic Tanz on June 27, nothing in the bankruptcy code invalidates such a postpetition transaction. DeVeny's contention that the parties formed a contract on June 27 constitutes a genuine issue of material fact. The trial court erred in granting summary judgment to Hadaller and Simon.
B. Exemptions under the Bankruptcy Code
¶ 21 The bankruptcy trustee also indicated that the allowable exemptions available to DeVeny would have, in any case, exempted the disputed contract from the bankruptcy estate. The schedules DeVeny filed do not show the value of the purported later contract on the filing date. Nor did DeVeny amend the schedules to add any future contract proceeds after her section 341 hearing on May 21, 2003. Hadaller and Simons argue that DeVeny was required to amend her filed petition to show the alleged sale.
¶ 22 Each person who files for relief from a debt under 11 U.S.C. section 522 is entitled to exempt certain personal property or property value from the bankruptcy estate. The debtor retains the right to sell, transfer, encumber, or use any property that is exempt. See Former 11 U.S.C. § 522 (2000). Here, DeVeny chose the federal exemptions and Tropic Tanz's disputed value ranges from $3,700, listed on DeVeny's schedules, to $35,000, the amount for which she sued. By exercising her federal exemptions, DeVeny retained Tropic Tanz and Haldaller and Simons' claim fails.
III. Judicial Estoppel
¶ 23 Alternatively, Hadaller and Simons contend that we should affirm the trial court's summary judgment order "because DeVeny is judicially estopped from asserting her claims." Br. of Resp't at 22. Hadaller and Simons assert that judicial estoppel applies because DeVeny had previously taken an inconsistent position regarding Tropic Tanz's value by failing to amend her bankruptcy schedule to include the alleged contract and by stating that "Tropic Tanz had a market value of zero." Br. of Resp't at 26.
¶ 24 Although we have already pointed out that Hadaller and Simons' argument that amending the bankruptcy schedules would have made a difference in this case is without merit, we address their judicial estoppel claim in order to further clarify the relationship between state and bankruptcy courts.
¶ 25 Judicial estoppel precludes a party from gaining an advantage by taking a position inconsistent with a position the party previously took before a court. Garrett v. Morgan, 127 Wash.App. 375, 379, 112 P.3d 531 (2005). Judicial estoppel is meant to prevent a party from gaining such an advantage or to maintain the integrity of judicial proceedings. Garrett, 127 Wash.App. at 379, 112 P.3d 531.
¶ 26 The law does not support Hadaller and Simons' assertion. In Johnson v. Si-Cor Inc., the plaintiff-debtor Johnson, sued Si-Cor, Inc. after he broke a tooth biting into a sandwich. 107 Wash.App. 902, 904, 28 P.3d 832 (2001). The trial court granted Si-Cor's summary judgment motion, ruling that "Johnson's failure to disclose his claim against [Si-Cor] in his bankruptcy case precluded him from later asserting the claim against [Si-Cor]." Johnson, 107 Wash.App. at 904, 28 P.3d 832. Division Three of this court reversed, holding:
We conclude that judicial estoppel applies only if a party's prior inconsistent position benefited the party or was adopted by the court. There is no evidence in this record that [] Johnson received a benefit by not disclosing his claim against [Si-Cor] in his bankruptcy case. There is no evidence that the bankruptcy court adopted a position asserted by [] Johnson that is inconsistent with the pursuit of his claim against [Si-Cor].
107 Wash.App. at 904, 28 P.3d 832.
¶ 27 Furthermore, the Johnson court clarified the debtor's obligations with regard to property the debtor acquired postpetition:
The debtor's obligation to disclose assets and liabilities by preparing and filing bankruptcy schedules is governed by statute, 11 U.S.C. § 521(1) and court rule, FED. R. BANKR. P. 1007. The specific obligation to amend the debtor's bankruptcy schedules *1067 to disclose assets acquired after the commencement of the case is regulated by FED. R. BANKR. P. 1007(h). The rule limits the debtor's obligation to disclose after-acquired property to the property identified in 11 U.S.C. § 541(a)(5).
Section 541(a)(5) brings into the bankruptcy estate certain property that the debtor acquires within 180 days after the commencement of the case. This includes property received: (1) by bequest, devise, or inheritance[,] (2) as a result of a property settlement agreement with the debtor's spouse, or an interlocutory or final divorce decree, or (3) as beneficiary of a life insurance policy or a death benefit plan. Significantly, § 541(a)(5) does not include other interests acquired by the debtor after the commencement of the case, such as Mr. Johnson's claim against [Si-Cor].
107 Wash.App. at 910-11, 28 P.3d 832 (footnote omitted).
¶ 28 Here, DeVeny filed for bankruptcy on April 10, well before her June 27 contract discussion with Hadaller and Simons, and there is no evidence that DeVeny received a benefit by not disclosing her June 27 contract in her bankruptcy case. Indeed, Donahue's statements that "[i]n light of the date of the contract, the fact that it is obviously disputed and Plaintiff's ability to exempt the contract, I do not intend to pursue the contract on behalf of the bankruptcy estate" and that "DeVeny is free to pursue her contract claims against the Defendants," affirmatively demonstrate that DeVeny did not receive any benefit by not disclosing the alleged contract in her bankruptcy case. CP at 60. Nor is there any evidence that the bankruptcy court adopted a position inconsistent with DeVeny's pursuit of her claim against Hadaller and Simons.
¶ 29 Relying on Garrett, 127 Wash.App. at 375, 112 P.3d 531, Cunningham v. Reliable Concrete Pumping, Inc., 126 Wash.App. 222, 108 P.3d 147 (2005), and Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778 (9th Cir.2001), Hadaller and Simons assert that judicial estoppel bars a plaintiff from suing on a claim that the plaintiff failed to disclose in bankruptcy filing. This assertion lacks merit because all of the cases relied on involve prepetition, not postpetition, claims. As we noted in Garrett, "[i]n Hamilton, the Ninth Circuit Court of Appeals affirmed the application of judicial estoppel to bar Hamilton's undisclosed prepetition claim against his insurer even after the bankruptcy court vacated the discharge." 127 Wash.App. at 380, 112 P.3d 531.

Johnson does not apply here. The Johnson court rejected judicial estoppel because the cause of action in Johnson's lawsuit accrued after he filed for Chapter 13 relief. 107 Wash.App. at 904-05, 911, 28 P.3d 832. Here, no one disputes that the Davises knew their claims against Morgan arose before the Davises filed for Chapter 7 relief. See 11 U.S.C. § 521.
Garrett, 127 Wash.App. at 380-81 n. 1, 112 P.3d 531. Moreover, the record here does not support Hadaller and Simon's assertion that DeVeny listed the value of Tropic Tanz and other related assets as zero in her schedules.
¶ 30 "Clearly, to give rise to an estoppel, the positions must be not merely different, but so inconsistent that one necessarily excludes the other." Markley v. Markley, 31 Wash.2d 605, 615, 198 P.2d 486 (1948) (quoting 19 Am.Jur. 709, Estoppel, § 73). See also Mastro v. Kumakichi Corp., 90 Wash. App. 157, 163-64, 951 P.2d 817 (1998). Although the amount DeVeny listed in her bankruptcy schedule ($3,700) is different from the disputed contract price ($9,893.95), and the value alleged by DeVeny in her lawsuit ($35,000.00), the difference does not show that any one of the amounts necessarily excludes the other, especially considering the numerous disputes among the parties. Accordingly, Hadaller and Simons' judicial estoppel claim fails.
IV. Attorney Fees
¶ 31 DeVeny requests attorney fees and Hadaller and Simons request cost reimbursement on appeal. DeVeny asserts that she is "entitled to attorney [] fees at trial" based on the Washington Trade Secrets Act and Consumer Protection Act. Br. of Appellant 18-19. Her request fails because she does not properly brief why she is entitled to attorney fees based on those statutes. "Argument and citation to authority *1068 are required under the rule to advise us of the appropriate grounds for an award of attorney fees as costs." Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 710 n. 4, 952 P.2d 590 (1998).
¶ 32 Without providing any basis or argument, Hadaller and Simons request that we "award the respondents their costs." Br. of Resp't at 31. Because they fail to comply with RAP 18.1(b), requiring a separate section in their brief to support their argument, they are not entitled to an award of costs. Wilson Court, 134 Wash.2d at 710 n. 4, 952 P.2d 590. Accordingly, we deny both parties' attorney fees and costs requests.
¶ 33 We reverse and remand for trial.
We concur: BRIDGEWATER and QUINN-BRINTNALL, JJ.
NOTES
[1] For clarity, we will refer to the defendants collectively as Hadaller and Simons.
[2] Chapter 19.108 Revised Code of Washington (RCW).
[3] Former U.S.C. § 362(a) (1998).
[4] It appears from the record that Tropic Tanz was not incorporated.
[5] 11 U.S.C. § 101 et seq. We cite the bankruptcy code as it was before the 2005 amendments, as they do not apply to this case.
[6] "Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors." Former 11 U.S.C. § 341(a) (1986).
[7] DeVeny alleges that she mistakenly believed she was discharged on May 21, after the § 341 hearing because she was unaware of the sixty day waiting period following the § 341 hearing.
[8] DeVeny does not contest this.
[9] It appears that Haldaller and Simons simply combined their planned new Curves business with DeVeny's during her absence.
[10] "The trustee in a case under this title [11 U.S.C. § 101 et seq.] is the representative of the estate." Former 11 U.S.C. § 323(a) (1978). The bankruptcy code also provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
Former 11 U.S.C. § 544(a) (1998).
[11] A debtor can exempt certain property from the bankruptcy estate that the trustee distributes to creditors. Former 11 U.S.C. § 522 (2000). "If the state has not opted out of the federal exemption scheme, § 522(b) allows the debtor to choose between the federal bankruptcy exemptions listed in § 522(d), other nonbankruptcy federal law, and exemptions under state or local law." Patriot Portfolio, LLC v. Weinstein (In re Weinstein), 164 F.3d 677, 679 (1st Cir.1999) (footnote omitted). Donahue's declaration indicates that the disputed contract would have been exempt from trustee administration under either state or federal exemptions.
[12] U.S.C. 11 Section 549 (Postpetition transactions) provides:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate
(1) that occurs after the commencement of the case; and
(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
(B) that is not authorized under this title or by the court.
(b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.
(c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected. (d) An action or proceeding under this section may not be commenced after the earlier of
(1) two years after the date of the transfer sought to be avoided; or
(2) the time the case is closed or dismissed.
Former 11 U.S.C. § 549 (1994).