**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| KENT L. and LINDA DAVIS; and SUSAN MAYER, derivatively on behalf of OLYMPIA FOOD COOPERATIVE,<br><br>        Appellants,<br><br>   v.<br><br>GRACE COX; ROCHELLE GAUSE; ERIN GENIA; T.J. JOHNSON; JAYNE KASZYNSKI; JACKIE KRZYZEK; JESSICA LAING; RON LAVIGNE; HARRY LEVINE; ERIC MAPES; JOHN NASON; JOHN REGAN; ROB RICHARDS; JULIA SOKOLOFF; and JOELLEN REINECK WILHELM,<br><br>        Respondents. | No. 51770-1-II<br><br><br><br>UNPUBLISHED OPINION |

GLASGOW, J.—In 2011, members of the Olympia Food Cooperative (Co-op) sued now former members of the Co-op's board of directors, arguing that the directors breached their fiduciary duties to the Co-op by adopting a boycott of Israeli goods in violation of the Co-op's internal governing policies. The plaintiffs asserted derivative status, suing on behalf of the Co-op. They sought declaratory judgment under the Uniform Declaratory Judgments Act, chapter 7.24 RCW (UDJA), an injunction ordering the defendants to suspend the Co-op's boycott, and monetary damages under a breach of fiduciary duties theory. The trial court granted summary judgment in favor of the defendants, and the plaintiffs now appeal.

The plaintiffs argue the trial court erred when it concluded that they lacked standing to bring their declaratory judgment and injunctive relief claims because they failed to show that the boycott actually harmed the Co-op. The plaintiffs also argue that the trial court erred when it held

that it could not grant effective injunctive relief because none of the named defendants remained on the Co-op's board of directors.

We hold that the trial court properly granted the defendants' motion for summary judgment. With regard to the declaratory judgment and injunctive relief claims, the plaintiffs do not have standing because they have failed to establish that the injury they assert can be redressed by the relief they request, namely an injunction against defendants who no longer govern the Co-Op. Moreover, the business judgment rule defeats all of the plaintiffs' claims, including their request for monetary damages. Accordingly, the trial court's dismissal with prejudice was proper. We affirm.

## FACTS

The Co-op is a nonprofit corporation, incorporated under the Nonprofit Corporation Act, chapter 24.03 RCW. The Co-op operates two retail grocery stores in Olympia, Washington. The Co-op is subject to governing documents, including articles of incorporation, bylaws, a mission statement, and policies, which included a boycott policy. The boycott policy was adopted in 1993 and established procedures allowing the Co-op to participate in nationally or internationally recognized boycotts of certain products by refusing to sell those products in its stores. According to the boycott policy, Co-op staff had to unanimously consent before the Co-op would participate in a boycott. The Co-op's bylaws simultaneously stated that the board's powers included, but were not limited to, "adopt[ing] major policy changes," "adopt[ing] policies to foster member involvement," and "resolv[ing] organizational conflicts after all other avenues of resolution have been exhausted." Clerk's Papers (CP) at 255.

The events leading to this litigation began in 2009, when Co-op staff members began to consider adopting a boycott of Israeli goods. The staff did not reach consensus, so they initiated a

2

discussion about the boycott at a board of directors meeting in May 2010. The board sent the issue back to the staff for further discussion, but the staff was unable to come to consensus. During the Co-op's July 2010 board meeting, the board passed a unanimous resolution adopting the proposal to boycott products made in Israel. The board then made available to Co-op members information about the established process for obtaining a reversal of a board decision through petition, followed by a membership vote. The first step required gathering the signatures of 300 Co-op members.[1]

In 2011, 5 current and former Co-op members filed suit against 16 board members, asserting a derivative claim on behalf of the Co-op. *Davis v. Cox*, 180 Wn. App. 514, 525, 325 P.3d 255 (2014), *rev'd*, 183 Wn.2d 269, 351 P.3d 862 (2015) (*Davis* I). The defendants filed a motion to strike the plaintiffs' complaint based on RCW 4.24.525, Washington's Act Limiting Strategic Lawsuits Against Public Participation (anti-SLAPP statute). *Davis* I, 180 Wn. App. at 525. The Thurston County Superior Court granted the defendants' motion to strike. *Id.* at 526. Division One affirmed. *Id.* at 527.

In its analysis, Division One evaluated whether the plaintiffs were likely to succeed on the merits using a summary judgment standard. *Id.* at 527-28, 532-36. In doing so, Division One concluded that the adoption of the boycott was not ultra vires or outside the scope of the board's authority because the board had authority under the Co-op's bylaws to adopt the boycott. Division One also concluded that the business judgment rule applied. *Id.* at 535. The business judgment rule "cautions against courts substituting their judgment for that of the board of directors, absent

---

[1] There is conflicting evidence in the record as to whether signatures were gathered and if so, whether they were gathered in sufficient number to trigger a membership vote. *See* CP at 52, 618, 632.

evidence of fraud, dishonesty, or incompetence." *Id.* The court concluded that the rule weighed in favor of the defendants. *Id.* at 535-36.

The Washington Supreme Court accepted review and struck down the anti-SLAPP statute, RCW 4.24.525, on state constitutional grounds. *Davis v. Cox*, 183 Wn.2d 269, 275, 351 P.3d 862 (2015) (*Davis* II). The court also held that Division One incorrectly applied a summary judgment standard as if there were no genuine issues of material fact, rather than weighing evidence to determine the probability that the plaintiffs would prevail on the merits of their claims. *Id.* at 280-82, 288. The Supreme Court reversed and remanded the case to the superior court. *Id.* at 275.

In 2016, the plaintiffs amended their complaint, ultimately bringing four claims and seeking damages, as well as declaratory and injunctive relief. First, the plaintiffs alleged that the former board of directors breached its fiduciary duties by adopting the boycott in violation of the Co-op's "governing rules, procedures, and principles." CP at 10. The plaintiffs asserted the defendants were personally liable for damages under this claim. Second, the plaintiffs claimed that the board's adoption of the boycott was ultra vires and therefore null and void because the board acted "without authority and in violation of [the Co-op's] governing rules, procedures, and principles, and/or . . . in violation of their duties to the Co-op." CP at 11-12. Third, the plaintiffs requested declaratory judgment establishing that the board acted without authority in adopting and failing to rescind the boycott and that the adoption of the boycott was ultra vires and "unenforceable, null, and void." CP at 12. Finally, the plaintiffs requested equitable relief in the form of a permanent injunction against the board preventing it from "enforcing or otherwise abiding by the Israel Boycott and Divestment policies," and ordering the board "to follow [the Co-op]'s governing rules, procedures, and principles in the future." CP at 12.

After conducting discovery, the parties filed cross motions for summary judgment in 2018. In the meantime, the membership of the Co-op's board of directors was changing, and by 2017 the board membership had changed entirely. None of the defendants remained on the board of directors.

The superior court granted summary judgment to the defendants, holding that the plaintiffs lacked standing because they failed to sufficiently allege injury in fact. The trial court explained that the plaintiffs had only provided evidence that three Co-op members and former members were no longer shopping at the Co-op as a result of the boycott. This was not sufficient to defeat summary judgment. The trial court also held it could not provide effective relief through an injunction in any event because none of the named defendants were still members of the Co-op's board of directors. For the same reasons, the trial court denied summary judgment to the plaintiffs. The trial court explained that there were genuine issues of material fact that precluded summary judgment on some remaining issues, and it did not need to reach other issues, without identifying which issues involved genuine issues of material fact. The plaintiffs appeal.

ANALYSIS

A.    Summary Judgment Burden and Standard of Review

In reviewing a grant of summary judgment, appellate courts apply the same standard as trial courts. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *see also DeVeny v. Hadaller*, 139 Wn. App. 605, 616, 161 P.3d 1059 (2007). We consider the evidence and the reasonable inferences therefrom in the light most favorable to

the nonmoving party. *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 864, 324 P.3d 763 (2014). We review the trial court's conclusions of law de novo. *DeVeny*, 139 Wn. App. at 616.

B.    Standing

The plaintiffs argue that the trial court improperly granted the defendants' motion for summary judgment based on standing. We agree with the trial court that the plaintiffs lack standing. The plaintiffs fail to show that any injury they assert can be redressed by a favorable court decision in this case. Because we hold that the plaintiffs have not established redressability, we do not consider other standing requirements.

1. Overview of Applicable Standing Tests

Washington courts generally apply a two pronged test to determine "whether a party has standing to bring a particular action." *Branson v. Port of Seattle*, 152 Wn.2d 862, 875, 101 P.3d 67 (2004). This two pronged standing test applies both to common law actions and claims brought under the UDJA. *See id.* at 875, 878.

The first prong of the test involves assessing "whether the interest asserted is arguably within the zone of interests to be protected by the statute or constitutional guaranty in question." *Id.* at 875. The second prong of the test requires us to decide "whether the party seeking standing

has suffered from an injury in fact, economic or otherwise." *Id.* at 876.[2] The injury in fact prong incorporates the requirement that the injury must be redressable. *See, e.g., Bavand v. OneWest Bank FSB*, 196 Wn. App. 813, 834, 385 P.3d 233 (2016).

Because the plaintiffs bring a claim under the UDJA, they must also meet four related justiciability requirements specific to UDJA claims. *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 410-11, 27 P.3d 1149 (2001). First, there must be "'an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement.'" *Id.* at 411 (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)). Second, the controversy must be "'between parties having genuine and opposing interests.'" *Id.* (quoting *Diversified Indus.*, 82 Wn.2d at 815). Third, the controversy must involve interests that are "'direct and substantial, rather than potential, theoretical, abstract or academic.'" *Id.* (quoting *Diversified Indus.*, 82 Wn.2d at 815). Fourth, the controversy must be one in which "'judicial determination . . . will be final and conclusive.'" *Id.* (quoting *Diversified Indus.*, 82 Wn.2d at 815). "Inherent in these four requirements are the traditional limiting doctrines of standing, mootness, and ripeness." *Id.*

---

[2] Likewise the broadly applicable test for injunctive relief established in *Tyler Pipe* provides that a party seeking injunctive relief must also establish "'that the acts complained of are either resulting in or will result in *actual and substantial injury* to him.'" *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982) (emphasis added) (quoting *Port of Seattle v Int'l Longshoremen's & Warehousemen's Union*, 52 Wn.2d 317, 324 P.2d 1099 (1958)). Although *Tyler Pipe* concerned a preliminary injunction, Washington courts have extended this principle broadly to other kinds of injunctive relief. *See, e.g.*, *N. Quinault Props., LLC v. State*, No. 76017-3-I, slip op. at 12 (Wash. Ct. App. Jan. 30, 2017), http://www.courts.wa.gov/opinions/pdf/760173.pdf. and *Hood Canal Sand & Gravel, LLC v. Goldmark*, 195 Wn. App. 284, 307, 381 P.3d 95 (2016). Actual injury (and thus the associated requirement of redressability) is also a prerequisite for injunctive relief claims.

2. Waiver

The plaintiffs first argue that the defendants waived standing by not raising it in their earlier motion to dismiss. They suggest that standing can be waived because it is "not a matter of subject matter jurisdiction." Br. of Appellant at 23. We disagree.

Regardless of whether standing is a matter of jurisdiction, Washington law is clear that standing can be raised at any time, even for the first time on appeal. *See, e.g.*, *Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports*, 146 Wn.2d 207, 212 n.3, 45 P.3d 186, 50 P.3d 618 (2002); *see also* RAP 2.5(a)(1) ("A party may present a ground for affirming a trial court decision which was not presented to the trial court if the record has been sufficiently developed to fairly consider the ground."). Thus, either way, the defendants did not waive standing when they failed to raise it in their earlier CR 12 motion to dismiss.

3. Claims for Injunctive Relief and Declaratory Judgment

Without deciding whether the plaintiffs in this case can show actual harm, we hold the plaintiffs lack standing for both their injunctive relief and declaratory judgment claims because the injuries they allege do not meet the redressability component of Washington's standing test.

Under both the two pronged standing requirements and the four justiciability requirements of the UDJA, plaintiffs must show that the injuries they allege are likely to be redressed by the requested relief. *Bavand*, 196 Wn. App. at 834; *see also Patterson v. Segale*, 171 Wn. App. 251, 258-59, 289 P.3d 657 (2012) (incorporating redressability analysis into the injury in fact requirement for Administrative Procedures Act, chapter 34.05 RCW, standing requirement, which overlaps substantially with UDJA's justiciability requirements).

To the extent the plaintiffs in this case argue that their injunctive relief claims are redressable because an injunction against the named defendants (former board members) would

bind the Co-op's current board of directors, we disagree. It is undisputed that the defendants are former, not current, board members. Because the defendants are no longer members of the Co-op's board of directors, they have no current say in whether the Co-op continues to maintain the boycott that the plaintiffs seek to enjoin. The plaintiffs offer no authority for the proposition that injunctive relief against former directors binds the corporation as a whole, including the current board of directors.

Similarly, to the extent the plaintiffs argue that the court can redress their injuries because derivative plaintiffs can obtain an injunction against themselves that also enjoins the corporation, we reject this argument. Plaintiffs cite no case law that supports this proposition, and the cases they do cite are inapplicable here. *See, e.g.*, *In re Ezcorp Inc. Consulting Agreement Derivative Litig.*, 130 A.3d 934, 948 (Del. Ch. 2016) (addressing the binding effect of judgments in derivative actions on *potential future* plaintiffs); *LaHue v. Keystone Inv. Co.*, 6 Wn. App. 765, 778, 496 P.2d 343 (1972) (holding that joinder of the corporation is not always essential in a derivative suit without addressing whether an injunction against plaintiffs or former board members would be effective against the current directors of a corporation). Neither party has cited any case in which a court issued an injunction against a derivative plaintiff bringing suit on behalf of the corporation in order to bind the corporation.

The plaintiffs' claim for declaratory judgment also fails because it does not present a justiciable controversy as required by the UDJA. *To-Ro*, 144 Wn.2d at 411. "[T]he four justiciability factors must coalesce to ensure that the court will be rendering a final judgment on an actual dispute between opposing parties with a genuine stake in the resolution." *Id.* (internal quotation marks omitted). Redressability is incorporated into the justiciability test in the sense

that the opposing parties must have a genuine stake in the outcome and the court must be able to provide effective relief.

Here, it is undisputed that the defendants are all former board members and therefore they no longer have a genuine stake in the resolution of the dispute. Put another way, the requested injunction of declaratory judgment against the defendants would not provide effective relief because the requested relief would have no effect on the current board of directors. "Thus, a judicial determination of the issues raised herein would not conclusively resolve the parties' dispute." *See Pasado's Safe Haven v. Dep't of Agric.*, 162 Wn. App. 746, 761-62, 259 P.3d 280 (2011).[3]

We conclude that the plaintiffs' claims for declaratory judgment and injunctive relief are not redressable. Because the plaintiffs fail to demonstrate redressability, which is required to support their declaratory judgment and injunctive relief claims, we need not address whether the plaintiffs have met any other prerequisites to standing, including whether they have provided sufficient evidence to establish actual harm.

4. Damages Claim

The plaintiffs also brought a claim for monetary damages based on the argument that the defendants breached their fiduciary duties and are personally liable to the Co-op for resulting damages. At least one Washington case has acknowledged that a director of a nonprofit corporation governed by chapter 24.03 RCW can be liable to the corporation and its members under a negligence standard. *See Waltz v. Tanager Estates Homeowners Ass'n*, 183 Wn. App. 85, 92, 332 P.3d 1133 (2014). Decisions from other jurisdictions suggest that, while derivative plaintiffs

---

[3] Because an injunction against the named defendants would not provide effective relief, we need not also address the *Tyler Pipe* prerequisites to an injunction.

cannot sue former directors for injunctive relief, it may be appropriate to sue former directors for monetary damages caused by a breach of fiduciary duty. *See Davis v. Dyson*, 387 Ill. App. 3d 676, 680, 693, 900 N.E.2d 698 (2008) (citing cases from other states and holding that shareholder plaintiffs can bring derivative suits seeking monetary damages against "third parties who have allegedly wronged the corporation," including former directors). We recognize that the plaintiffs' claim for monetary damages does not suffer from the same lack of redressability that the claims for declaratory and injunctive relief do.

Nevertheless, the business judgment rule is a barrier that defeats the plaintiffs' claims for damages, as well as their claims for declaratory and injunctive relief. We have held that "[u]nder the business judgment rule, corporate management is immunized from liability . . . where (1) the decision to undertake the transaction is within the power of the corporation and the authority of management, and (2) there is a reasonable basis to indicate that the transaction was made in good faith." *McCormick v. Dunn & Black*, *P.S.*, 140 Wn. App. 873, 887, 167 P.3d 610 (2007). The business judgment rule "cautions against courts substituting their judgment for that of the board of directors, absent evidence of fraud, dishonesty, or incompetence." *Davis* I, 180 Wn. App. at 535.

In considering the defendants' motion to strike under Washington's anti-SLAPP act, Division One applied the business judgment rule to the board's decision to adopt the boycott in order to explain why the plaintiffs were not likely to prevail.[4] *Davis* I, 180 Wn. App. at 532-33,

---

[4] The parties dispute whether Division One's decision in *Davis* I (granting defendants' motion to dismiss under Washington's then-existing anti-SLAPP statute) applies as the "law of the case," thereby limiting the parameters of our analysis in the present appeal. 180 Wn. App. 514. Because the Washington Supreme Court did reverse Division One's holdings on the merits to the extent it held that Division One applied an improper standard to the plaintiffs' claims, *Davis* II, 183 Wn.2d at 281-82, 296, and given that additional evidence has been added to the record since Division One's decision, we do not apply the law of the case doctrine.

535. Division One explained that the business judgment rule applies because the existence of the 1993 boycott policy never removed from the board its general authority to manage the Co-op, including its authority to adopt boycotts. *Id*. at 534-36. Moreover, Division One concluded that no evidence of fraud, dishonesty or incompetence was presented. *Id.* at 535.

Division One was correct. The Co-op was incorporated under chapter 24.03 RCW, which permits corporations to be organized for "any lawful purpose." *See* CP at 253; RCW 24.03.015. The Co-op's bylaws stated that the board's powers included, but were not limited to, "adopt[ing] major policy changes," "adopt[ing] policies to foster member involvement," and "resolv[ing] organizational conflicts after all other avenues have been exhausted." CP at 255. It is undisputed that the corporation had authority to adopt or amend policies through its board. Nothing in the bylaws, the boycott policy, or other governing documents suggested that the Co-op's board was powerless to adopt or reject a boycott itself if Co-op staff could not come to consensus under the policy.

A challenge to the procedure with which the boycott was adopted does not undermine the power of the corporation or the authority of management to adopt or amend Co-op policies. *See Hartstene Pointe Maint. Ass'n v. Diehl*, 95 Wn. App. 339, 345, 979 P.2d 854 (1999). And still no evidence has been presented after subsequent discovery suggesting that the defendants committed fraud or dishonesty. To the extent the plaintiffs argue that the business judgment rule should not apply here because the boycott was motivated by former board members' own political objectives, we conclude that breach of the duty of loyalty canonically requires a showing that the director engaged in a self-interested transaction in which they were materially interested in an economic way. *See, e.g.*, *Rodriguez v. Loudeye Corp*., 144 Wn. App. 709, 722, 189 P.3d 168 (2008). Here, there is no evidence that any directors had material financial interest in adopting the boycott.

As a result, we conclude that there is no reason to come to a different conclusion than Division One. The application of the business judgment rule means that, as a matter of law, the plaintiffs cannot prevail on their breach of fiduciary duty claims. There is no genuine issue of material fact preventing summary judgment with regard to this issue. Application of the business judgment rule is an independent basis supporting dismissal of all claims.

We need not reach the plaintiffs' remaining arguments. We affirm the superior court's decision to dismiss with prejudice.

C.      Attorney Fees

The defendants request attorney fees under RAP 18.9(a), which authorizes the court to order a party who files a frivolous appeal to pay compensatory damages to the opposing party. The defendants also argue the plaintiffs should be sanctioned under RAP 18.9(a), which authorizes the court to order a party who files a frivolous appeal to pay sanctions to the court. Even though we affirm the trial court, the plaintiffs' appeal is not frivolous.

The defendants also request attorney fees and costs on the basis that we have the equitable power to order that "a shareholder who loses on his or her derivative claims [pay] reasonable expenses incurred by the corporation in its defense." Br. of Resp't at 39. RCW 23B.07.400 permits the court to award costs and fees to the defendants "if it finds that the proceeding was commenced without reasonable cause." RCW 23B.07.400 gives appellate courts discretion over whether to require the plaintiffs to pay defendants' reasonable expenses. The defendants prevail, but we do not conclude that the proceeding was without reasonable cause, and we decline to impose fees, costs, or expenses on the defendants.

CONCLUSION

The trial court properly granted the defendants' motion for summary judgment and dismissed the plaintiffs' claims with prejudice. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Glasgow, J_

Glasgow, J.

I concur:

_Cruser, J._

Cruser, J.

MAXA, C.J (concurring) – I concur in the result and I agree with the majority opinion's analysis. However, I would resolve the case on a different basis: the plaintiffs' failure to show that the boycott decision caused injury in fact to the Olympia Food Co-op.

As noted in the majority opinion, one of the standing requirements is that "the party seeking standing has suffered from an injury in fact, economic or otherwise." *Branson v. Port of Seattle*, 152 Wn.2d 862, 876, 101 P.3d 67 (2004). Because the plaintiffs filed a derivative action on behalf of the Co-op, they were required to establish that the boycott decision caused injury in fact *to the Co-op*.

The only admissible evidence that plaintiffs submitted was that one person left the Co-op and two people stopped shopping there because of the boycott. But other evidence showed that total membership and total sales volume actually increased after the boycott decision. I do not believe that the evidence presented to the trial court established sufficient injury to satisfy the standing requirement of injury in fact.

_____
Maxa, C.J.