28 P.3d 832 (2001)
107 Wash.App. 902
Robert JOHNSON, Appellant,
v.
SI-COR INC., d/b/a, McDonalds of Wenatchee and Lopez Foods Inc., an Oklahoma Corporation doing business in Washington, Respondents.
Nos. 19606-2-III, 19639-9-III.
Court of Appeals of Washington, Division 3, Panel Ten.
August 14, 2001.
*833 John R. Bonin, Renee Hampson, Wenatchee, for Appellant.
Roy A. Umlauf, Forsberg & Umlauf, Seattle, Curtis L. Shoemaker, Paine, Hamblen, Coffin, Brooke & Miller, Spokane, for Respondents.
KURTZ, C.J.
During the time that Robert Johnson was going through bankruptcy, he broke a tooth biting into a McDonalds sandwich. After his bankruptcy case was closed, Mr. Johnson filed a lawsuit against Si-Cor Inc. of Wenatchee and Lopez Foods (collectively referred to as McDonalds). The superior court granted McDonalds motion for summary judgment based on judicial estoppel. Judicial estoppel precludes a party from taking a position inconsistent with a position that the party previously took in litigation. The court reasoned that Mr. Johnson's failure to disclose his claim against McDonalds in his bankruptcy case precluded him from later asserting the claim against McDonalds. Mr. Johnson appeals.
We conclude that judicial estoppel applies only if a party's prior inconsistent position benefited the party or was adopted by the court. There is no evidence in this record that Mr. Johnson received a benefit by not disclosing his claim against McDonalds in his bankruptcy case. There is no evidence that the bankruptcy court adopted a position asserted by Mr. Johnson that is inconsistent with the pursuit of his claim against McDonalds. Accordingly, we reverse the summary judgment dismissal and remand for trial.

FACTS
On November 21, 1996, Robert and Sheila Johnson filed a petition for relief as Chapter 13 debtors with the United States Bankruptcy Court for the Eastern District of Washington. On December 12, 1996, Mr. Johnson allegedly broke his tooth on a small stone contained in a McDonalds breakfast sandwich. On the same day, he sought dental treatment. During that and subsequent treatments, he freely discussed his intention to sue McDonalds.
Less than one month later, on January 16, 1997, Mr. Johnson attended the first meeting of creditors regarding his Chapter 13 bankruptcy. At that meeting, he was examined by the Chapter 13 trustee. At that meeting, Mr. Johnson did not inform either the Chapter 13 trustee or his creditors about his potential lawsuit against McDonalds. During the pendency of Mr. Johnson's Chapter 13 case, he did not amend his bankruptcy schedules in order to disclose his claim against McDonalds.
On August 25, 1997, the Johnsons' petition for relief under Chapter 13 of the bankruptcy code was converted to a petition for relief under Chapter 7. Upon conversion to Chapter 7, the Johnsons' bankruptcy schedules were amended, but only to add additional creditors. In the normal course, the Johnsons received a Chapter 7 discharge. On May 27, 1999, the Johnsons' bankruptcy proceeding was closed as a "no asset" case.
*834 Approximately six months later, Mr. Johnson filed suit against McDonalds. During discovery, McDonalds learned that Mr. Johnson's claim against McDonalds arose during the pendency of the Johnsons' bankruptcy case. After McDonalds determined that the claim had not been disclosed, McDonalds filed a motion for summary judgment claiming that Mr. Johnson was judicially estopped from bringing his claim for damages due to his failure to list his claim against McDonalds as an asset in his bankruptcy case. Mr. Johnson was not represented at the summary judgment hearing because his attorneys failed to note the date of the hearing. The court granted the motion for summary judgment.
Mr. Johnson moved to vacate the order under CR 60(b)(1) arguing excusable neglect. The court denied the motion to vacate. Mr. Johnson timely appealed both the order granting summary judgment and the order denying the motion to vacate.

ANALYSIS
Judicial estoppel precludes a party from gaining an advantage by taking one position and then seeking a second advantage by taking an incompatible position in a subsequent action. "The purposes of the doctrine are to preserve respect for judicial proceedings without the necessity of resort to the perjury statutes; to bar as evidence statements by a party which would be contrary to sworn testimony the party has given in prior judicial proceedings; and to avoid inconsistency, duplicity, and the waste of time." Seattle-First Nat'l Bank v. Marshall, 31 Wash.App. 339, 343, 641 P.2d 1194 (1982).
McDonalds contends that Mr. Johnson's failure to disclose his claim against it as an asset of his bankruptcy estate provides an appropriate basis for the imposition of judicial estoppel against his lawsuit. Mr. Johnson argues that judicial estoppel does not apply to his case because McDonalds was not a creditor of his bankruptcy.
In Markley v. Markley, 31 Wash.2d 605, 198 P.2d 486 (1948), the Supreme Court reviewed the discussion of judicial estoppel contained in 19 Am.Jur., and appeared to adopt the treatise's statement of the elements for judicial estoppel:
"(1) The inconsistent position first asserted must have been successfully maintained;
(2) a judgment must have been rendered;
(3) the positions must be clearly inconsistent;
(4) the parties and questions must be the same;
(5) the party claiming estoppel must have been misled and have changed his position;
(6) it must appear unjust to one party to permit the other to change."
Markley, 31 Wash.2d at 614-15, 198 P.2d 486 (quoting 19 AM.JUR. 709, Estoppel § 73). These elements were restated in Raymond v. Ingram, 47 Wash.App. 781, 785, 737 P.2d 314 (1987). In Raymond, the court refused to apply the doctrine of judicial estoppel because the party's inconsistent position was taken in reference to the court's denial of a motion for summary judgment, which the court reasoned was not a final judgment.
The Markley elements for judicial estoppel were most recently applied in Sprague v. Sysco Corporation, 97 Wash.App. 169, 180 n. 4, 982 P.2d 1202 (1999), review denied, 140 Wash.2d 1004, 999 P.2d 1262 (2000), a case that is factually similar to the case before us. In Sprague, a Chapter 7 debtor failed to include in her bankruptcy schedules a pre-petition discrimination claim, which she pursued after filing the bankruptcy petition. Arguing judicial estoppel, her employer asked that her lawsuit be dismissed because she had failed to schedule the claim as an asset in the bankruptcy. The appellate court refused to apply judicial estoppel because the employer was not a creditor of Ms. Sprague and, for that reason, was not involved in her bankruptcy. Significantly, the appellate court referenced the Markley elements and apparently applied the elements requiring identity of parties and reliance. Sprague, 97 Wash.App. at 180 n. 4, 982 P.2d 1202.
Professors Lewis H. Orland and Karl B. Tegland have criticized Markley, arguing that the court inappropriately interjected ordinary estoppel principles into the doctrine of *835 judicial estoppel. Because the doctrine is designed to protect the court and not litigants, the professors assert that the doctrine should be applied, even if the two actions involve different parties, no reliance, no resultant damage, and even if no judgment on the merits is entered in the first litigation. The professors acknowledge that their position may be contrary to Washington case law. 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE, TRIAL PRACTICE § 382 (5th ed.1996); see also Witzel v. Tena, 48 Wash.2d 628, 633, 295 P.2d 1115 (1956) (requiring a prior judgment and reliance upon that judgment); Butler v. Supreme Court, 53 Wash. 118, 124-25, 101 P. 481 (1909) (requiring detrimental reliance upon the prior judgment).
The majority of courts that have considered the matter have concluded that privity of the parties, reliance, and prejudice generally recognized elements of estoppel are inapplicable to the doctrine of judicial estoppel. 1B, JAMES WILLIAM MOORE, MOORE'S FEDERAL PRACTICE, § 0.405[8] (2d ed.1991); Eugene R. Anderson & Nadia V. Holober, Preventing Inconsistencies in Litigation with a Spotlight on Insurance Coverage Litigation: The Doctrines of Judicial Estoppel, Equitable Estoppel, Quasi-Estoppel, Collateral Estoppel, "Mend the Hold," "Fraud on the Court," and Judicial and Evidentiary Admissions, 4 CONN. INS. L.J. 589, 622-36 (1997-1998). We note that cases such as Sprague and Witzel that have applied the Markley elements for judicial estoppel including the problematical elements of privity, detrimental reliance, and final judgmenthave done so without analysis of the issue. We agree with Professors Orland and Tegland that because the doctrine of judicial estoppel is designed to protect courts, courts should not impose elements of related doctrines like equitable and collateral estoppel, which are intended primarily to protect litigants. We conclude that the doctrine may be applied even if the two actions involve different parties. We further conclude that the doctrine may be applied even if there is no reliance, no resultant damage, and no final judgment entered in the first action.
Courts differ on when the doctrine of judicial estoppel should be applied. Some courts utilize what has been characterized as the "sanctity of the oath" approach, which requires only that the prior position was stated under oath. Other courts require "prior success" or "judicial acceptance" which precludes the second inconsistent position only if the prior position was accepted by the court. The rule that judicial estoppel applies in subsequent litigation only if the court in the prior litigation adopted the inconsistent assertion has been characterized as the majority rule. Milgard Tempering, Inc. v. Selas Corp., 902 F.2d 703, 716 (9th Cir.1990); see also Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, 139 F.3d 1234, 1239 (9th Cir. 1998).
In Witzel, our Supreme Court appears to have adopted the majority rule. There, Ms. Witzel divorced Mr. Tena. In the papers that she submitted to the Nevada court, she stated that there was no community property. Many years later, after the property had appreciated, she filed a second lawsuit asserting an undivided interest in community property that she claimed was not considered by the Nevada divorce court. In barring her claim, the court stated: "A party will not be permitted to plead matters that are inconsistent with his pleadings in a former action between the same parties, if he prevailed upon those pleadings and if the other party has been misled thereby." Witzel, 48 Wash.2d at 633, 295 P.2d 1115. We conclude that judicial estoppel applies only if a litigant's prior inconsistent position benefited the litigant or was accepted by the court.
This does not mean that before judicial estoppel applies there must be a prior specific inconsistent court order. A Chapter 7 debtor, for instance, could well be precluded from pursuing an undisclosed pre-petition, personal injury lawsuit, if the debtor's case was closed as a "no asset" case. By not disclosing the asset, the debtor keeps an asset that may have created a dividend for the debtor's unsecured creditors. By closing the case as a "no asset" case, the court implicitly accepts the debtor's position, as stated in the debtor's bankruptcy schedules, that the liquidation of the debtor's nonexempt *836 assets would not create a dividend for unsecured creditors. See Puget Sound Nat'l Bank v. Ferguson, 102 Wash.App. 400, 403-04, 7 P.3d 822 (2000), review denied, 143 Wash.2d 1002, 20 P.3d 944 (2001).
Under the right circumstances, Chapter 13 of the bankruptcy code may present a strong case for the application of judicial estoppel. As part of the Chapter 13 plan confirmation process, the debtor may be required to represent to the court what unsecured creditors theoretically would have received under a Chapter 7 liquidation. The purpose of this evidence is to convince the court that these creditors are doing at least as well under the Chapter 13 plan as they would have done if the case was converted for liquidation under Chapter 7. 5 WILLIAM MILLER COLLIER, COLLIER ON BANKRUPTCY, § 1325.05[2] (Lawrence P. King ed., 15th ed.1991). By confirming the debtor's Chapter 13 plan, the court implicitly accepts the debtor's Chapter 7 liquidation analysis. In such a case, if the debtor wrongfully failed to disclose a personal injury asset that would have affected the liquidation analysis, judicial estoppel should preclude the debtor from subsequently litigating the personal injury claim.
McDonalds argues that Mr. Johnson's failure to amend his bankruptcy schedules to reveal his post-petition claim against McDonalds is sufficient for the imposition of judicial estoppel. We reject McDonalds argument for three reasons. First, we question whether Mr. Johnson was obligated to amend his bankruptcy schedules for the purpose of disclosing his claim against McDonalds. Second, we conclude that, in and of itself, a bankruptcy debtor's failure to schedule an asset does not sufficiently involve the court so that the debtor's position becomes a position accepted by the court. Third, there is no evidence that Mr. Johnson received a benefit by not disclosing his claim against McDonalds.
The debtor's obligation to disclose assets and liabilities by preparing and filing bankruptcy schedules is governed by statute, 11 U.S.C.A. § 521(1) and court rule, Fed. R. Bankr.P. 1007. The specific obligation to amend the debtor's bankruptcy schedules to disclose assets acquired after the commencement of the case is regulated by Fed. R. Bankr.P. 1007(h).[1] The rule limits the debtor's obligation to disclose after-acquired property to the property identified in 11 U.S.C.A. § 541(a)(5).
Section 541(a)(5) brings into the bankruptcy estate certain property that the debtor acquires within 180 days after the commencement of the case. This includes property received: (1) by bequest, devise, or inheritance; (2) as a result of a property settlement agreement with the debtor's spouse, or an interlocutory or final divorce decree, or (3) as beneficiary of a life insurance policy or a death benefit plan. Significantly, § 541(a)(5) does not include other interests acquired by the debtor after the commencement of the case, such as Mr. Johnson's claim against McDonalds.
There is a crucial difference between the after-acquired property specified in 11 U.S.C.A. § 541(a)(5) and other after-acquired property. The after-acquired property identified in § 541(a)(5) is property that a Chapter 7 trustee may liquidate for the benefit of the debtor's general unsecured creditors, unless the property is claimed exempt by the debtor. By contrast, other property acquired by the debtor after the commencement of a Chapter 13 case may be retained *837 by the debtor and would not be available for distribution to unsecured creditors in the event of Chapter 7 liquidation. In re Stamm, 222 F.3d 216, 218 (5th Cir.2000). This means that after Mr. Johnson's Chapter 13 was converted to a Chapter 7, he was entitled to retain the proceeds of his lawsuit against McDonalds, free from any claim of the bankruptcy trustee or creditors of his bankruptcy. See Farmer v. Taco Bell Corp., 242 B.R. 435 (W.D.Tenn.1999).
McDonalds also argues that Mr. Johnson was obligated to disclose his claim against McDonalds when his Chapter 13 case was converted to Chapter 7. The debtor's obligation in this regard is governed by Fed. R. Bankr.P. 1019(5)(B) and (C). Upon conversion from Chapter 13 to Chapter 7, the rule requires the debtor to file a schedule of unpaid debts incurred after the filing. Fed. R. Bankr.P. 1019(5)(B)(i). If the conversion occurs after the confirmation of the debtor's Chapter 13 plan, the rule requires the debtor to file other schedules containing additional information, but it does not require the debtor to disclose after-acquired property, unless the debtor's case was converted in bad faith from Chapter 13 to Chapter 7. Fed. R. Bankr.P. 1019(5)(C)(i); 11 U.S.C.A. § 348(f)(2).
The dispositive issue is whether Mr. Johnson made a representation regarding his pre-petition claim against McDonalds that either benefited him or that the bankruptcy court accepted. We infer from the record that Mr. Johnson confirmed a Chapter 13 wage earner plan, without disclosing his post-petition claim against McDonalds. Mr. Johnson's Chapter 13 wage earner plan and the materials submitted to the court in support of the confirmation of the plan are not part of the record before us. Consequently, we do not know what impact, if any, Mr. Johnson's failure to disclose the personal injury asset had upon the Chapter 13 confirmation process. There is no evidence that when the bankruptcy court confirmed the Chapter 13 plan, it somehow accepted a position that was inconsistent with Mr. Johnson pursuing his personal injury lawsuit against McDonalds. Likewise, there is no evidence that Mr. Johnson somehow received a benefit by not disclosing his claim against McDonalds.
After Mr. Johnson's Chapter 13 case was converted to Chapter 7, the case was closed as a "no asset" case. Mr. Johnson received a Chapter 7 discharge. The existence of a post-petition personal injury claim, which would not have been property of the Chapter 7 estate or available for distribution to unsecured creditors, would not have been relevant to the bankruptcy court's decision either to close the case or to grant Mr. Johnson a discharge. There is no evidence in this record that in closing the case, the bankruptcy court accepted a position that is inconsistent with Mr. Johnson's pursuit of his lawsuit against McDonalds. Likewise, there is no evidence that the nondisclosure of the claim against McDonalds in Mr. Johnson's bankruptcy case benefited Mr. Johnson.
We hold that Mr. Johnson is not precluded from pursuing his lawsuit against McDonalds by reason of judicial estoppel. The order of summary judgment is reversed. In view of our disposition, we do not address Mr. Johnson's remaining assignments of error.
WE CONCUR: BROWN and KATO, JJ.
NOTES
[1] Fed.R.Bankr.P. 1007(h) provides:

"Interests acquired or arising after petition.
"If, as provided by § 541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 10 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the chapter 7 liquidation case, chapter 11 reorganization case, chapter 12 family farmer's debt adjustment case, or chapter 13 individual debt adjustment case. If any of the property required to be reported under this subdivision is claimed by the debtor as exempt, the debtor shall claim the exemptions in the supplemental schedule. The duty to file a supplemental schedule in accordance with this subdivision continues notwithstanding the closing of the case, except that the schedule need not be filed in a chapter 11, chapter 12, or chapter 13 case with respect to property acquired after entry of the order confirming a chapter 11 plan or discharging the debtor in a chapter 12 or chapter 13 case." (Emphasis added.)