**Jane M. MEFFORD, Appellant**

v.

**NORTON HOSPITALS, INC., d/b/a Norton Audubon Hospital, Appellee**

**NO. 2014–CA–001036–MR**

Court of Appeals of Kentucky.

MARCH 25, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme Court February 9, 2017.

Brief for Appellant: Brian E. Clare, Louisville, Kentucky.

Brief for Appellee: Patricia C. Le Meur, Joseph M. Effinger, Louisville, Kentucky.

BEFORE: DIXON, D. LAMBERT AND THOMPSON, JUDGES.

*OPINION*

THOMPSON, JUDGE:

Jane M. Mefford appeals from a summary judgment dismissing her medical malpractice claim against Norton Hospitals, Inc., d/b/a Norton Audubon Hospital, based on the doctrine of judicial estoppel. The trial court concluded Jane intentionally failed to disclose the existence of her pending malpractice action to the bankruptcy court prior to it granting a Chapter 7 discharge of her debts and was estopped from pursuing her malpractice claim. Jane contends she had no motive to conceal her malpractice claim to the bankruptcy court because if disclosed, the malpractice claim would not have been an asset of her converted Chapter 7 bankruptcy estate. Additionally, Jane argues application of judicial estoppel is not warranted because, in good faith, she relied on her bankruptcy attorney's advice regarding the applicable law. We agree with Jane that she had no motive to conceal her medical malpractice claim and acted in good faith reliance on her counsel when she did not reveal the claim. We hold the trial court erred in applying judicial estoppel.

On October 3, 2011, Jane and her husband, represented by counsel, filed a joint petition for Chapter 13 bankruptcy in the Western District of Kentucky. The petition forms required that Jane provide a complete listing of all assets, including contingent and unliquidated claims. She denied having any claims, completed, and then signed the portion declaring under penalty of perjury that the information provided was true and correct.

On April 2, 2012, Jane appeared at Norton's emergency room for treatment. The basis for this malpractice action is her allegation that Norton negligently failed to assess and treat her alleged stroke-like symptoms in a timely fashion resulting in personal injury.

On June 28, 2012, Jane filed a motion in the bankruptcy court to suspend Chapter 13 plan payments for three months stating

that she suffered several strokes and was unable to work. The bankruptcy court granted Jane's motion.

On August 9, 2012, Jane's medical malpractice counsel notified Norton of her claim. On November 29, 2012, Jane filed this malpractice action. She did not amend any of her pleadings or schedules to inform the bankruptcy court of her malpractice claim.

On March 26, 2013, Jane and her husband appeared before the bankruptcy court seeking to modify her Chapter 13 plan down from 50% payment of debts to 30% payment of debts. Again, she did not advise the bankruptcy court of her malpractice claim against Norton. The bankruptcy court granted the motion.

The malpractice claim remained pending. On September 25, 2013, Jane's deposition was taken, at which Norton's counsel inquired whether she had ever filed bankruptcy. She acknowledged she had but stated it was "seven, eight or maybe nine" years prior to that time. She had filed a Chapter 7 bankruptcy seven years prior.

On September 27, 2013, Jane and her husband petitioned the bankruptcy court to convert their debtor status from Chapter 13 to Chapter 7, seeking a full discharge of debts. The petition required that Jane and her husband "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case[.]" The pending malpractice claim against Norton was not referenced in the petitions.

On September 30, 2013, the bankruptcy court granted the Meffords' petition to convert from Chapter 13 to Chapter 7. It simultaneously ordered them to submit copies of all complaints for all pending lawsuits in which either of them was a plaintiff. Jane did not provide the trustee with a copy of her complaint against Norton.

A creditors meeting was held on November 5, 2013, at which the Meffords provided sworn testimony regarding their assets and financial condition. Jane affirmed that her schedules and filing were accurate and represented that she had no further information to provide. When specifically asked whether she had any current lawsuits, Jane replied "no."

On November 19, 2013, Mr. Mefford's deposition was taken in the malpractice action. At that time, he testified that he and his wife had a pending Chapter 7 bankruptcy. Despite being a creditor in the bankruptcy action, who received notice from the bankruptcy court of the filing, Norton maintains this was the first time it learned of the pending bankruptcy proceeding.

On January 7, 2014, the bankruptcy court entered an order discharging the Meffords' debts, including debts related to the treatment Jane received at Norton. Just ten days later, Norton moved for summary judgment in the medical malpractice action, arguing that Jane had an affirmative and continuous duty to disclose the malpractice lawsuit to the bankruptcy court and her failure to do so required dismissal of the malpractice action on the basis of judicial estoppel.

Jane argued that judicial estoppel did not apply because she had no duty to disclose the malpractice action that accrued after she and her husband filed their Chapter 13 petition but before they converted to a Chapter 7. She further argued her nondisclosure of the action was done in good faith and upon the advice of her bankruptcy attorneys. In response to Norton's motion for summary judgment, Jane filed her affidavit stating that she disclosed the claim against Norton to her bankruptcy attorney and relied on her at-

torney's advice in preparing and filing bankruptcy documents. Her bankruptcy attorney filed an affidavit stating that she advised Jane that her bankruptcy schedules were not required to be amended to add the malpractice claim which occurred after the filing of the original petition because it was not an asset of the estate.

The trial court ruled that the doctrine of judicial estoppel precluded Jane's malpractice action, finding that on multiple occasions Jane's bankruptcy schedules were not amended to include the malpractice action as an asset and that it was an intentional misrepresentation or omission. The trial court further found Jane had an incentive to omit the action from her bankruptcy disclosures so that any amount recovered would not be used to pay creditors.

Jane filed a Kentucky Rules of Civil Procedure (CR) 59.05 motion. The motion was denied and this appeal followed.

The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. CR 56.03. Because factual findings are not at issue, we are not required to defer to the trial court. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378, 381 (Ky.1992). When summary judgment is granted, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky.1991). The standard for a summary judgment requires that it be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor[.]" *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996) (quoting

*Huddleston v. Hughes*, 843 S.W.2d 901, 903 (Ky.App.1992).

■ Norton contends there is no genuine issue of material fact that Jane intentionally induced the bankruptcy court to act in reliance on her failure to disclose the malpractice claim against it and her multiple affirmative assertions that she had no such claims. Consequently, it contends the trial court properly ruled that, as a matter of law, she is judicially estopped from pursuing her malpractice claim.

■ The doctrine of judicial estoppel evolved as an equitable principle intended to protect the integrity of the judicial process by prohibiting a party from taking inconsistent positions in judicial proceedings. *Colston Investment Co. v. Home Supply Co.*, 74 S.W.3d 759, 763 (Ky.App. 2001). However, its consequences are harsh and may bind a party to a position without regard to the "truth-seeking function of the court." *Eubanks v. CBSK Financial Group Inc.*, 385 F.3d 894, 897 (6th Cir.2004). Consequently, it should be cautiously applied and only when the integrity of the judicial process will be protected. *Id.*

■ Generally, several factors are considered when determining whether to apply the doctrine: "(1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hisle v. Lexington–Fayette Urban Cty. Gov't*, 258 S.W.3d 422, 434–35 (Ky.App.2008). These same factors have been applied on a modified basis in the bankruptcy context where a debtor fails to disclose an asset either in

the original bankruptcy petition or by subsequent amendment.

■ Quoting *Teledyne Indus. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990), *Browning v. Levy*, 283 F.3d 761, 775–76 (6th Cir.2002), stated the rule: A debtor may be precluded "from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" The Court in *Browning* emphasized that "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *Id.* at 776. Two circumstances in which a debtor's failure to disclose might be deemed inadvertent are "where the debtor lacks knowledge of the factual basis of the undisclosed claims," and the other where "the debtor has no motive for concealment." *Id.*

Jane contends she had no motive to not disclose her malpractice claim because it was not part of her converted Chapter 7 bankruptcy estate and, therefore, she should not be estopped from seeking redress for Norton's negligence. Our analysis necessarily begins with pertinent provisions of the Bankruptcy Code.

■ In a Chapter 13 bankruptcy, a wide range of property is included in the bankruptcy estate including all property acquired by the debtor during the bankruptcy proceeding. 11 United States Code Annotated (U.S.C.A.) § 1306(a)(1). "A tort claim in favor of the debtor arising after the filing of a Chapter 13 bankruptcy petition but before the bankruptcy is closed is considered after-acquired property that is part of the estate." *Wolfork v. Tackett*, 241 Ga.App. 633, 633–34, 526 S.E.2d 436, 437 (1999). If the tort action becomes part of the estate, "then the proceeds from it could go towards paying [the debtors'] creditors, rather than simply to paying [the debtor]." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 479 (6th Cir.2010). Consequently, a Chapter 13 debtor always has an interest in minimal income and assets. *Lewis v. Weyerhaeuser Co.*, 141 Fed.Appx. 420, 426 (6th Cir.2005).

■ The same rule does not apply to Chapter 7 bankruptcy proceedings. As noted in *In re Bobroff*, 766 F.2d 797, 803 (3d Cir.1985), under 11 U.S.C.A. § 541, with certain exceptions, "in a straight bankruptcy liquidation case the only property interests of a debtor that become part of the estate are those existing 'as of the commencement of the case.'" The reason for the rule is "[t]o enable the chapter 7 debtor to make a fresh start[.]" *Id.* Therefore, unlike in a Chapter 13 bankruptcy where the motive to not disclose a cause of action that arose during the pendency of the bankruptcy is clear, generally, in a Chapter 7 bankruptcy there is no clear motive for its nondisclosure. *In re Wakefield*, 312 B.R. 333 (Bankr.N.D.Tex. 2004).

Here, the Meffords filed a Chapter 13 bankruptcy but later converted to a Chapter 7 bankruptcy. Therefore, we are not dealing with a Chapter 13 and its disclosure requirements or those rules associated with a Chapter 7. A totally different rule is applied when a debtor converts a Chapter 13 to a Chapter 7 bankruptcy.

Prior to 1994, the question was unsettled whether a tort claim acquired by the debtor after the date of filing of a Chapter 13 petition but prior to the date of a Chapter 7 conversion was property of the bankruptcy estate or property of the debtor. Two lines of judicial thought existed. The *Lybrook* approach set forth in *In re Lybrook*, 951 F.2d 136 (7th Cir.1991), considered any property acquired after a Chap-

ter 13 filing property of the bankruptcy estate and it remained in the estate upon conversion to Chapter 7. The reason for the rule was to "discourage strategic, opportunistic behavior that hurts creditors[.]" *Id.* at 137.

The second approach set forth in *In re Bobroff*, 766 F.2d at 803, demanded a different result. Under that approach, property acquired after the Chapter 13 filing but before conversion to Chapter 7 was not part of the bankruptcy estate. The Court reasoned that "when chapter 13 does prove unavailing" there is no policy reason why "the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts[.]" *Id.* (quoting *In re Hannan*, 24 B.R. 691, 692 (Bankr. E.D.N.Y.1982)).

In 1994, Congress amended section 348 of the Bankruptcy Code and settled the contrasting approaches. The *Lybrook* approach was expressly rejected in favor of the *Bobroff* approach. That section now provides in part:

Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—

property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion[.]

11 U.S.C.A. § 348(f)(1)(A). The only exception to the rule is if a case under Chapter 13 is converted to another chapter in bad faith. In such instance, the "property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." 11 U.S.C.A. § 348(f)(2). As observed in *In re Bostick*, 400 B.R. 348, 357 (Bankr.D.Conn.2009), the purpose of adopting the view that post-

petition Chapter 13 property is not part of the converted Chapter 7 estate is to encourage Chapter 13 filings and its repayment plan provisions instead of liquidation.

In *Farmer v. Taco Bell Corp.*, 242 B.R. 435, 440–41 (W.D.Tenn.1999), the Court addressed the amendment to section 348 and whether a debtor's tort action that arose after confirmation of the debtor's Chapter 13 plan but prior to the conversion to Chapter 7 was included in the converted estate or belonged to the debtor. The Court held that under the amendment, a tort action acquired between the Chapter 13 filing and the Chapter 7 conversion is not part of the bankruptcy estate. The debtors' admission that they did not disclose the cause of action on their bankruptcy schedules was inconsequential. "[B]ecause the property did not become part of the bankruptcy estate, there is no reason to estop [the debtors] from pursuing the claim now because of their failure to schedule the claim." *Id.* at 441.

The Court in *Johnson v. Si–Cor Inc.*, 107 Wash.App. 902, 28 P.3d 832 (2001), expressed the same view. The Washington Court reversed a summary judgment based on judicial estoppel where the debtor's personal injury action against McDonalds arose after filing a Chapter 13 petition but before conversion to Chapter 7. The debtor did not inform the trustee or his creditors about his potential lawsuit or amend his schedules. Eventually, he received a Chapter 7 discharge and later filed suit against McDonalds.

The Court noted that there may be a strong case for application of judicial estoppel when a Chapter 7 debtor failed to disclose a *pre-petition* personal injury action or, under certain circumstances, failing to disclose a post-petition cause of action in a Chapter 13 bankruptcy. *Id.* at 909, 28 P.3d at 836. However, the Court

rejected the application of judicial estoppel to the debtor's converted case.

First, the Court pointed out that the obligation to amend the debtor's bankruptcy schedules governed by 11 U.S.C.A. § 521(1) and court rule, Fed. R. Bankr.P. 1007, is limited to disclosure of after-acquired property identified in 11 U.S.CA. § 541(a)(5). *Id.* at 910, 28 P.3d at 836. That section of the Bankruptcy Code "brings into the bankruptcy estate certain property that the debtor acquires within 180 days after the commencement of the case" including "property received: (1) by bequest, devise, or inheritance; (2) as a result of a property settlement agreement with the debtor's spouse, or an interlocutory or final divorce decree, or (3) as beneficiary of a life insurance policy or a death benefit plan." *Id.* at 911, 28 P.3d at 836. Holding that the debtor's claim against McDonalds was not included in after-acquired property, the Court found it significant that "§ 541(a)(5) does not include other interests acquired by the debtor after the commencement of the case[.]" *Id.*

██ The only exception to the rule that a tort claim is not included in the converted estate is if the debtor converted his case in bad faith. *Id.* at 911–12, 28 P.3d at 837. As framed by the Washington Court, the dispositive issue is whether the debtor made a representation regarding his cause of action that benefited him or that the bankruptcy court accepted. *Id.* at 912, 28 P.3d at 837. The Court concluded that there was no evidence that the bankruptcy court accepted a position inconsistent with the debtor's pursuit of his claim against McDonalds and, most significant, there was no evidence that the debtor received any benefit by not disclosing his claim. It reasoned:

> The existence of a post-petition personal injury claim, which would not have been property of the Chapter 7 estate or

available for distribution to unsecured creditors, would not have been relevant to the bankruptcy court's decision either to close the case or to grant Mr. Johnson a discharge. There is no evidence in this record that in closing the case, the bankruptcy court accepted a position that is inconsistent with Mr. Johnson's pursuit of his lawsuit against McDonalds. Likewise, there is no evidence that the nondisclosure of the claim against McDonalds in Mr. Johnson's bankruptcy case benefited Mr. Johnson. *Id.*

Although not a converted case, we also find persuasive the decision of the Federal Court of Appeals in *Javery v. Lucent Technologies, Inc.,* 741 F.3d 686 (6th Cir. 2014). *Javery* involved the debtor's failure to disclose an Employee Retirement Income Security Act (ERISA) claim in a Chapter 13 bankruptcy. The evidence was that the debtor disclosed the claim to his bankruptcy attorney who did not reveal the claim in the bankruptcy proceeding. The Court focused on the debtor's lack of "intentional, strategic concealment or impermissible gamesmanship" pointing out that the omission was attributable to the debtor's bankruptcy attorney. *Id.* at 698. The Court also focused on the lack of motive noting that "under Ohio laws, proceeds from a [debtor's] disability insurance policy are completely exempt from a debtor's estate. . . . to the extent that they are necessary for the support of the debtor and his family." *Id.* at 698.

Unless Jane sought to convert her Chapter 13 bankruptcy to a Chapter 7 bankruptcy in bad faith, her medical malpractice action was not included in her converted Chapter 7 bankruptcy estate. While not using the term "bad faith," the trial court concluded that Jane's nondisclosure was intentional and not the result of mistake or inadvertence.

■ There can be no inference of bad faith solely because Jane's cause of action against Norton arose after she and her husband filed for Chapter 13 bankruptcy and later elected to convert their case to a Chapter 7. "To hold otherwise would clearly go against the principle that a person should not be penalized solely for exercising a statutory right." *In re Bejarano,* 302 B.R. 559, 562 (Bankr.N.D.Ohio 2003). Moreover, bad faith is not simply bad judgment or negligence. "[I]t implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will." *U.S. v. True,* 250 F.3d 410, 423 (6th Cir. 2001).

■ Because bad faith necessarily operates to benefit the actor, whether there was evidence of a ' "motive or intention' to conceal the potential claim [is] critical to a finding of bad faith[.]" *White,* 617 F.3d at 477. The evidence shows that after suffering a stroke, Jane and her husband were unable to make the Chapter 13 payments but instead of immediately seeking to convert from Chapter 13 to Chapter 7, attempted to suspend her payments. The affidavit from her bankruptcy attorney affirmatively states that Jane disclosed the existence of the action against Norton to her and she made the professional decision to not list it on the bankruptcy schedules. As stated, there was no reason to list the malpractice claim on the bankruptcy schedules and, therefore, Jane had no motive to conceal its existence. The medical malpractice claim that arose after the filing of the Chapter 13 petition and before the Chapter 7 conversion had no relevance to and necessarily no impact on the debt discharge. We conclude judicial estoppel does not apply.

There are some inconsistencies in Jane's testimony in the bankruptcy proceeding and in the malpractice action that may or may not be used adversely by Norton in Jane's malpractice action. However, the harsh consequence of judicial estoppel is not appropriate.

Based on the forgoing, the summary judgment of the Jefferson Circuit Court is reversed and the case remanded for further proceedings.

ALL CONCUR.