RENDERED: APRIL 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

**OPINION OF FEBRUARY 4, 2022, WITHDRAWN**

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0922-MR

ELIZABETH HARAC, INDIVIDUALLY                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.         HONORABLE ANNIE O'CONNELL, JUDGE
ACTION NO. 14-CI-006247


NORTON HOSPITALS, INC. D/B/A NORTON
HOSPITAL; JORGE L. RODRIGUEZ, M.D.;
UNIVERSITY SURGICAL ASSOCIATES, P.S.C.;
UNIVERSITY OF LOUISVILLE PHYSICIANS, INC.;
COMMUNITY MEDICAL ASSOCIATES, INC. D/B/A
NORTON MEDICAL GROUP D/B/A NORTON SURGICAL
SPECIALISTS; KATHRYN L. PRY, ESQ., AS TRUSTEE
FOR THE BANKRUPTCY ESTATE OF ELIZABETH
HARAC; AND UNIVERSITY OF LOUISVILLE
SCHOOL OF MEDICINE                               APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Elizabeth Harac appeals from orders of the Jefferson Circuit Court which granted summary judgment in favor of Norton Hospitals, Inc. (hereinafter referred to as Norton); Jorge Rodriguez, M.D.; and University Surgical Associates, P.S.C. in a medical malpractice action.  Appellant argues the trial court erred in granting summary judgment on the basis of judicial estoppel.  We believe that summary judgment is inappropriate at this time; therefore, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Appellant underwent a lap band surgical procedure on December 20, 2013.  The procedure was performed by Dr. Rodriguez at Norton Hospital.  During the procedure, Appellant alleges Dr. Rodriguez perforated her bowel, but failed to realize this mistake.  Appellant felt unwell after her surgery, but she was eventually discharged on December 21, 2013.  The next day, she returned to the hospital with issues that resembled possible complications from the surgery.  She was examined, but eventually went into cardiac arrest.  She went nearly nine minutes without a heartbeat but was revived.  Exploratory surgery revealed a gastric leak.  Appellant remained hospitalized until the end of March of 2014.  According to her deposition testimony, she recalls very little of her time in the hospital and has been diagnosed

with an anoxic brain injury[1] with permanent neurocognitive brain deficits and speech issues.

During Appellant's hospitalization, Appellant's husband, Ian Harac, contacted an attorney to begin bankruptcy proceedings for debts unrelated to the hospitalization. Those debts totaled around $40,000. In addition, Mr. Harac began speaking to attorneys about a possible medical malpractice suit. In March of 2014, before Appellant was released from the hospital, Ronald Wilt, Esq. was hired for the civil claims and began investigating the potential cause of action. In September of 2014, a petition for Chapter 7 bankruptcy was filed. None of the documents filed with the bankruptcy petition listed a potential medical malpractice claim as an asset of the Haracs.

On November 5, 2014, during a meeting of the creditors, the bankruptcy trustee asked the Haracs, under oath, if they were parties to a lawsuit or expected to be parties to a lawsuit where they could recover money or property. They both responded in the negative. On November 20, 2014, Mr. Wilt informed the Haracs that he believed they had a viable medical malpractice case and that he would file the cause of action. On December 5, 2014, the underlying medical malpractice lawsuit was filed. In January of 2015, the debts of the Haracs were discharged by the bankruptcy court. At no time between the filing of the medical

---

[1] A brain injury caused by lack of oxygen.

malpractice lawsuit and the discharge of the debts did the Haracs inform the bankruptcy court or trustee about the medical malpractice lawsuit being filed.

On October 4, 2016, during Appellant's deposition, counsel for Norton asked Appellant if she had ever filed for bankruptcy. She replied in the affirmative. On November 16, 2016, Norton filed a motion for summary judgment arguing that Appellant should be judicially estopped from pursuing her malpractice action because she did not inform the bankruptcy court of the lawsuit. On January 3, 2017, Appellant moved to reopen her bankruptcy action in order to list the lawsuit as an asset. The bankruptcy court granted the motion to reopen.

On July 25, 2017, oral argument was had on the motion for summary judgment. On July 31, 2017, the trial court granted Norton's motion. The trial court held that because Appellant had made a sworn statement before the bankruptcy trustee that she was not a party to any potential lawsuits, judicial estoppel was appropriate. The trial court also held that the bankruptcy trustee should be added to the cause of action and could pursue the medical malpractice action on behalf of the creditors. The court held that any amount won above that needed to satisfy Appellant's creditors would then be returned to Appellees. Soon after this order was entered, Dr. Rodriguez and University Surgical Associates moved to join in Norton's summary judgment. That motion was granted, and Dr.

Rodriguez and University Surgical Associates were granted summary judgment based on judicial estoppel.

Appellant then sought to remove this case to the bankruptcy court. Appellant believed the bankruptcy court would be the more appropriate venue to decide the judicial estoppel issue. The attempt to do this failed. Appellant then moved for a trial date. Norton objected and moved to make the summary judgment order final and appealable. On June 24, 2020, the Jefferson Circuit Court entered an order making the summary judgment order final and appealable. This appeal followed.

## ANALYSIS

Appellant's first argument on appeal is that the judicial estoppel issue should be heard by the bankruptcy court. We disagree. Non-bankruptcy courts routinely deal with this issue and the Jefferson Circuit Court was the appropriate venue. *See Mefford v. Norton Hosps., Inc.*, 507 S.W.3d 580 (Ky. App. 2016); *Stephenson v. Malloy*, 700 F.3d 265 (6th Cir. 2012); *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010); *Slater v. United States Steel Corporation*, 871 F.3d 1174 (11th Cir. 2017); *Ledesma v. AT & T Corporation*, No. 2016-CA-000695-MR, 2018 WL 480764 (Ky. App. Jan. 19, 2018).

Appellant's next argument on appeal is that the trial court erred in granting summary judgment because there are still genuine issues of material fact

regarding judicial estoppel.  We will first set forth the summary judgment standard

of review and then we will discuss the general tenets of judicial estoppel.

> The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. . . .  "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor."  Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances."  Consequently, summary judgment must be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor[.]"

*Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citations omitted).

"Because summary judgment involves only legal questions and the existence of

any disputed material issues of fact, an appellate court need not defer to the trial

court's decision and will review the issue *de novo*."  *Lewis v. B & R Corporation*,

56 S.W.3d 432, 436 (Ky. App. 2001).

> The doctrine of judicial estoppel evolved as an equitable principle intended to protect the integrity of the judicial process by prohibiting a party from taking inconsistent positions in judicial proceedings.  *Colston Investment Co. v. Home Supply Co.*, 74 S.W.3d 759, 763 (Ky. App. 2001).  However, its consequences are harsh and may bind a party to a position without regard to the "truth-seeking function of the court."  *Eubanks v. CBSK Financial Group Inc.*, 385 F.3d 894, 897 (6th Cir. 2004).  Consequently, it should be cautiously applied and only when the integrity of the judicial process will be protected.  *Id.*

Generally, several factors are considered when determining whether to apply the doctrine: "(1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hisle v. Lexington-Fayette Urban Cty. Gov't*, 258 S.W.3d 422, 434-35 (Ky. App. 2008). These same factors have been applied on a modified basis in the bankruptcy context where a debtor fails to disclose an asset either in the original bankruptcy petition or by subsequent amendment.

Quoting *Teledyne Indus. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990), *Browning v. Levy*, 283 F.3d 761, 775-76 (6th Cir. 2002), stated the rule: A debtor may be precluded "from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" The Court in *Browning* emphasized that "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *Id.* at 776. Two circumstances in which a debtor's failure to disclose might be deemed inadvertent are "where the debtor lacks knowledge of the factual basis of the undisclosed claims," and the other where "the debtor has no motive for concealment." *Id.*

*Mefford*, 507 S.W.3d at 584-85. Additionally, the case of *White*, 617 F.3d 480, added a bad faith element when determining whether judicial estoppel is appropriate. This bad faith element was cited with approval by this Court in *Ledesma*, 2018 WL 480764. In *Ledesma*, this Court stated that

-7-

the absence of bad faith prevents the application of judicial estoppel. *White*, 617 F.3d at 480; *Stephenson v. Malloy*, 700 F.3d 265, 268 (6th Cir. 2012) ("*White* added a bad-faith inquiry to the inadvertence prong of the judicial-estoppel test[.]"). A debtor can demonstrate the lack of bad faith by "**showing her attempts to correct her initial omission**." *Id.* Thus, "even if the debtor has knowledge of a potential cause of action and a motive to conceal it, if the plaintiff does not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional." *Lewis* [*v. Weyerhaeuser Co.*, 141 Fed. App'x 420, 436 (6th Cir. 2005)]. "**Furthermore, since judicial estoppel seeks to prevent parties from abusing the judicial process through cynical gamesmanship, the timing of [the debtor's] effort is also significant**." *White*, 617 F.3d at 480.

*Id.* at *5 (emphasis added).

> Moreover, bad faith is not simply bad judgment or negligence. "[I]t implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *U.S. v. True*, 250 F.3d 410, 423 (6th Cir. 2001).

> Because bad faith necessarily operates to benefit the actor, whether there was evidence of a "'motive or intention' to conceal the potential claim [is] critical to a finding of bad faith[.]" *White*, 617 F.3d at 477.

*Mefford*, 507 S.W.3d at 588. All of the above-mentioned factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire v. Maine*, 532 U.S. 742,

-8-

751, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001).

To reiterate, the primary factors to consider when determining whether to apply the judicial estoppel doctrine in the bankruptcy context are as follows: (1) whether a party's later position is inconsistent with an earlier position; (2) whether the party was successful in persuading a court to accept the earlier position; and (3) this conduct was not simply due to mistake or inadvertence. *Mefford*, 507 S.W.3d at 584-85. Courts should also consider whether there was an element of bad faith involved when examining the third factor. *White*, 617 F.3d at 480.

In the case at hand, we agree with Appellees that the first two factors have been met. Appellant did not inform the bankruptcy court about her intention to file the medical malpractice lawsuit even though it was filed before the bankruptcy case was completed. These are inconsistent positions. In addition, she successfully persuaded the bankruptcy court that she had no assets, even though contingent lawsuits should be included as an asset in bankruptcy proceedings, *id.* at 479 n.5, which resulted in her debts being discharged.

We believe the third factor, however, precludes summary judgment at this stage because there are still genuine issues of material fact. The trial court held that because Appellant did not inform the bankruptcy court of her potential medical malpractice lawsuit, she should be estopped from moving forward with the

case. In our judgment, Appellant has raised enough genuine issues of material fact to question whether her failure to inform the bankruptcy court was done in bad faith. "Because direct evidence of motive is difficult to produce, claims involving proof of a defendant's intent seldom lend themselves to summary disposition[.]" *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 218 (6th Cir. 2011) (internal quotation marks and citation omitted). Appellant introduced evidence that while she was hospitalized, her husband and mother controlled the bankruptcy process. In addition, when the bankruptcy petition was filed, the potential medical malpractice claims were still being investigated by counsel and no definitive decision had been made about whether a complaint would be filed. The same goes for when Appellant was questioned by the bankruptcy trustee. At that time, no decision had been made regarding the filing of a medical malpractice claim. Also relevant is the fact that evidence in the record indicates that Appellant has suffered from memory issues and cognitive decline since her anoxic brain injury. Also, during Appellant's deposition, when trial counsel for Norton asked her if she had ever filed for bankruptcy, she honestly informed counsel that she had. Finally, bankruptcy courts allow petitioners to reopen cases to administer assets left out of the proceedings the first time. 11 U.S.C.[2] § 350(b). This suggests that not all omissions are done in bad faith.

---

[2] United States Code.

In summary, Appellant provided evidence to the court that suggests she did not know that a potential medical malpractice claim was subject to the bankruptcy proceedings and that she was hardly involved with the bankruptcy proceedings due to her injuries. When reviewing an order granting summary judgment, we must view the record in a light most favorable to the opposing party, which in this case is Appellant. Appellant has raised enough issues regarding her mental state and her limited involvement with the bankruptcy proceedings to make summary judgment premature at this time.

We also considered relevant to this Opinion the fact that the trial court did not hold an evidentiary hearing where Appellant and her husband could be questioned and the court could gauge their credibility. We believe a finding of bad faith requires a judgment of a person's intent. Additionally, the summary judgment order being appealed was short and did not include a great amount of detail regarding the trial court's reasoning for finding judicial estoppel was applicable.

While we have examined this issue using the *de novo* standard of review of an order granting summary judgment, we acknowledge that there is conflicting case law regarding the standard of review for judicial estoppel. The published case of *Mefford*, *supra*, reviewed judicial estoppel *de novo*, as we have done; however, the unpublished case of *Ledesma*, *supra*, reviewed judicial estoppel

under an abuse of discretion standard. In *Ledesma*, the Court stated that "judicial estoppel is an equitable doctrine invoked by the court at its discretion. In Kentucky, matters committed to the circuit court's sound discretion are reviewed by an appellate court for an abuse of discretion." *Ledesma*, 2018 WL 480764, at *2 (citations omitted). Out of an abundance of caution, we will also review this issue pursuant to an abuse of discretion standard. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

We believe that it was an abuse of discretion for the trial court to apply judicial estoppel at this stage. As previously discussed, we believe that Appellant has raised enough issues of material fact regarding her involvement with the bankruptcy proceedings to make a finding of judicial estoppel unreasonable at this time. In addition, we also find as relevant the fact that Appellant's medical malpractice claim was still being investigated when the bankruptcy petition was filed. Had she filed her medical malpractice claim, then filed for bankruptcy and not informed the bankruptcy trustee of her claim, then this case would turn out differently. While Appellant may have suspected she was a victim of medical malpractice, she was still in the preliminary phase of gathering information when her bankruptcy petition was filed. Appellant has provided enough evidence to

indicate she may not have known she had a potential medical malpractice claim; therefore, the failure to disclose the potential claim could be due to mistake or inadvertence.

Appellant's final argument is that the trial court erred when it held that the bankruptcy trustee could pursue the medical malpractice case and pay the creditors with any proceeds won. Then, any funds left over would be returned to Appellees so as to preclude Appellant from benefiting from her alleged bad faith actions. The trial court cited to *Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011), which crafted a similar remedy. We believe this is appropriate. It would protect the innocent creditors and punish Appellant if she acted in bad faith.

## CONCLUSION

Based on the foregoing, we reverse and remand. Appellant has shown that there are still genuine issues of material fact regarding whether she omitted the potential medical malpractice lawsuit from her bankruptcy proceedings in bad faith. Applying judicial estoppel is unreasonable at this time.

ALL CONCUR.

BRIEFS FOR APPELLANT:

T.J. Smith
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Ronald Wilt
Louisville, Kentucky

BRIEF FOR APPELLEE NORTON
HOSPITALS, INC.:

Patricia C. Le Meur
Joseph M. Effinger
Ryan D. Nafziger
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE NORTON HOSPITALS,
INC.:

Joseph M. Effinger
Louisville, Kentucky

BRIEF FOR APPELLEES JORGE L.
RODRIGUEZ, M.D. AND
UNIVERSITY SURGICAL
ASSOCIATES, P.S.C.:

Beth H. McMasters
Ashley J. Butler
Amy L. Cooper
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEES JORGE L.
RODRIGUEZ, M.D. AND
UNIVERSITY SURGICAL
ASSOCIATES, P.S.C.:

Ashley J. Butler
Louisville, Kentucky